THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ALFREDO MONTAÑEZ RAMOS, Defendant and Appellant.

No. CR-71-17. Decided October 20, 1972.

*Torres González & Torres González* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Roberto Armstrong, Jr., Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

After having been accused and convicted of the above-mentioned offenses,[1] appellant was sentenced on February 10, 1970, to life imprisonment to be served concurrently with the sentences of 6 months in jail, from 2 to 5 years in the penitentiary, and from 3 to 8 years for the commission of the other offenses. The jury's verdict was by a vote of 9 to 3.

Appellant assigns that the trial court erred (1) in convicting appellant by an inadequate, insufficient, unjust, unlawful, and suggestive identification; (2) in giving instructions to the jury different to the one which the jury had requested upon returning to the court; (3) in charging as to the defense of alibi and good reputation; (4) in finding appellant guilty on all counts, without that evidence being sufficient inasmuch as it showed reasonable doubt as to defendant's guilt.

(1) Let us examine first the circumstances of the case regarding to the identification of appellant accused of shooting David Trujillo Díaz to death in the bar of witness Sierra Crespo around midnight of June 6 to 7, 1969.

Upon completing the presentation of the prosecution evidence which consisted of two eyewitnesses of the events, only one of which identified appellant as the author of the offenses (the rest of the evidence for the prosecution was techno-medical and of photographs of the place, bullet caps, and a copy of *El Imparcial* with a written note on the back), the defense raised the lack of appellant's identification. The trial judge ruled that:

". . . The court understands that the case of the doctrine of Gómez Incera is, naturally, applicable in Puerto Rico and it is applicable to the facts of these cases. The facts of this case precisely fall within the scope of the doctrine established by the

---

[1] COMPILER'S NOTE: The offenses are Murder in the First Degree, violations of §§ 6 and 8 of the Weapons Law, and Assault with Intent To Commit Murder.

court in which the Supreme Court refuses to reverse the judgment, on the contrary, it affirms the judgment of conviction because it understands that despite the fact that the procedure which should be followed is to show a number of persons to the witness, a lineup, of persons more or less similar in order for him to pick the one from that group who according to the witness' judgment was the one who committed the acts. Nevertheless, in the Gómez Incera case the Court said that it was not an identification suggested by the Police because the identification which was made was the result of an observation made by *two witnesses for the prosecution for about twenty minutes while the acts were being committed.* Of course, in this case the witness has not been observing the accused for twenty minutes, according to his testimony, but the element of time, the period of time is not the only factor to be considered and a person may sometimes observe and identify another person better in a shorter period of time, it depends on the attendant circumstances.

"For example, in the Gómez Incera case both witnesses are under a nervous strain at the time when a holdup, a robbery, is being committed, they have to be nervous, their capacity to observe must be upset, to a certain extent it is limited and perhaps under those circumstances the Supreme Court understands that a period of twenty minutes is reasonable time for a person, even though terrified, nervous, to observe the defendant sufficiently well to identify him afterwards.

"In this case we understand that the principal witness for the prosecution, witness by the name of *Félix Sierra Crespo, having observed the defendant, according to him, for seconds during that night, but that he also saw him in the afternoon,* at four in the afternoon when the witness was calm, he had no reason to be nervous, nothing was happening at the time, he talked with the defendant although very shortly, a short conversation, but it was during the daytime, he saw him close to him when he asked the question, *observed him while calm, he was not terrified.* That circumstance that he was observing him at close range, talking to him while close to him, during daytime, calm, together with the fact that he was wearing flashy clothes, an orange garb with the shirt and pants in combination, and then that night during the turmoil at the time of the shoot-

ing he saw him again, he observed his clothes which are very flashy, all those circumstances lead the court to determine that a reliable identification is involved. Taking into consideration besides that it is not a question of a person who is being kept at the police station, or that the accused is being taken out of a cell but that he arrives in an automobile with a group of persons. Of course, it is true that they only bring the accused down, but they bring the accused down from the automobile and the witness points at him there when he is alighting from the automobile." (Italics ours. )

Sierra Crespo identified appellant as the author of the offenses in this case on June 8, 1969. To said effects he testified that he saw appellant on Sunday, June 8, 1969 "In a group that the C.I.C. was bringing. The agent by the name of Alejo Maldonado told me 'you know this one' and I told him that that was the young man"; that Maldonado ordered appellant to stand in front of the car and then the witness saw him; that "the only one standing in front of the car was this [referring to appellant] the one who Alejo Maldonado took out."

We must consider if this identification is valid, and does not violate the due process of law, in the light of the doctrine enounced by this Court in *People* v. *Gómez Incera*, 97 P.R.R. 243 (1969),[1] which is applicable to this case inasmuch as the aforesaid identification was carried out subsequent to the date on which we decided the *Gómez Incera* case, *supra*.

We said in *Gómez Incera* that:

". . . Until the corresponding rules are adopted it seems to us that substantially following, insofar as feasible, in conformance with our procedure, the provisions of § 369 of the Law of Criminal Procedure for Cuba and Puerto Rico, copied above, is sufficient guarantee. Thus the recognition or identification shall

---

[1] On the indicated date the police should have been properly instructed about its obligation of putting in practice the rule of *Gómez Incera, supra*. We assume that the due instructions to that effect have already been given and that the same is being complied with.

take place by placing before the person who is to make it, the suspect or accused, producing said person together with other persons of similar external circumstances. In the presence of all of them or from a point where he cannot be seen, according to the determination of the person who is conducting the investigation, the person to make the identification shall state if the person to whom he may have referred in his statements is in the group, and if he is, he shall designate him in a clear and specific manner."

■ In *Stovall* v. *Denno*, 388 U.S. 293 (1967), the identification of the accused by a lady who had been seriously wounded by him upon penetrating her home and after having killed that lady's husband was sustained, because the confrontation of the accused in the hospital with the injured lady was imperative, immediately necessary inasmuch as nobody knew for how long the lady would remain alive, so that the only feasible procedure was to take the accused to the lady's room in the hospital. It is in this case, and with reference to the foregoing circumstances, that the Supreme Court of the United States said that "a violation of the due process of law in the conduct of a confrontation depends on the totality of the surrounding circumstances. . . ."

In *Simmons* v. *United States*, 390 U.S. 377 (1968), the identification of an accused by five witnesses separately in a series of photographs where the accused appeared accompanied by other persons was sustained. In this case the court said that the photographic identification was necessary.

■ Of course this problem of the confrontation cannot come forth when the accused is a person known to the identifying witness prior to the commission of the offense or when said witness testifies that he observed the accused during a reasonably long time while he committed the offense charged, so that he could identify him with such certainty and precision that it could not result in an irreparable error of identification, as in *Gómez Incera, supra*, in *Boyd* v. *State*, 472 S.W.

2d 125 (Texas 1971), and in *Edmisten* v. *People*, 490 P.2d 58 (Colo. 1971).[2]

 Let us examine next the circumstances which culminated in the challenged identification in order to determine if the same justify the conclusion that the lineup identification provided by *Gómez Incera, supra,* was not necessary.

The evidence shows that:

1.—The witness who identified appellant as the author of the offenses was Sierra Crespo who said that the relation which existed between himself and the deceased, David Trujillo, consisted in that of "client and a friend of mine, a very good person . . . good worker and reliable . . . he helped me when I needed him . . . I left my business . . . for him [Trujillo] to reside there on occasions."

2.—At the time of the shooting, in the bar there were eight clients sitting on the stools in front of the bar, there were three others in other places of the establishment plus two employees. Only two of these, friends of the deceased, were brought to testify by the prosecuting attorney and of these only one testified that he saw appellant firing at the deceased.

3.—The bar had colored lights somewhat soft, "dim," according to one of the witnesses. Sierra used eyeglasses (dark, according to what the prosecuting attorney said during the course of his argument) at the time that the shooting occurred. The distance from where Sierra was preparing the drink to where the person shooting was, was estimated to be 16 feet.

4.—Sierra testified that he was with his back towards the bar preparing some drinks when he heard the shots; that *"As soon as I heard the noise I bent down, first I dropped the*

---

[2] See, besides, *United States ex rel. Davis* v. *Follette,* 410 F.2d 1135 (2d Cir. 1969) ; *State v. Dessureault,* 453 P.2d 951 (Ariz. 1969) ; 6-3 *Columbia Journal of Law and Social Problems* 345, 348–350.

*drink and as soon as the boy went away running I turned around . . . that he did not know or had seen appellant before that day"*; that he did not see appellant when he entered the establishment. (Italics ours.) He continued testifying that "When I heard the shots I immediately looked towards the place from where they were coming . . . because the place is small . . . . All was very rapid, a matter of seconds"; that the person who fired the shots "After he finished . . . he went away running, opened the door"; he said that "It was pra, pra, pra, pra, . . . . And then he immediately went away running"; that he did not object to the estimated time of this as about two seconds; that he had seen appellant, in his establishment at four in the afternoon when the latter asked him who was Trujillo and the witness pointed him out to him. When confronted with his statement which he had previously signed, in which he said that "I had never seen him" (previously) referring to appellant, he said that that was a mistake; that in said statement two errors were committed. Yet, nevertheless, one appears specifically corrected in it while this one of never having seen appellant before the events does not appear corrected so that the statement would agree with his testimony that he had seen appellant in the afternoon. The witness was asked why he had not told the prosecuting attorney to include in the statement the fact that he had seen appellant in the afternoon of the day of the events. He answered: "I cannot understand how . . . ." He testified that appellant was wearing the same clothes during the night that he was wearing in the afternoon, that is, orange or brown shirt in combination with the pants "More or less of the same color or maybe a little darker." He did not include in his previous statement this detail about the clothes. He testified that the description of the author of the offenses was "A young man, just as I have just said, I told you that he was 20 years old more or less . . . a tall man, thin, olive-skinned . . . ." In his testimony he did not make reference, as

he did in his statement, to the fact that appellant had curly hair.

The prosecuting attorney who took the statement was asked if he left out from that statement any fact that Sierra may have told him during the investigation. He answered "There is everything the witness said." He did not remember that Sierra had told him that appellant had been at Sierra's establishment at four in the afternoon of the day of the events.

The second witness of the events, Ramón Rivera Arocho, testified that he arrived at the bar moments before the shooting. He stood up next to the deceased ". . . at the place through which people come into the business, I was standing close to the wall. I took out my billfold because I was about to leave, to pay to the owner of the business, when I was looking at the money which I was going to give him, upon hearing the shots as I was there looking I bent down, when I stood up that I looked at me, my chest was wounded. Then, in the turmoil everybody started running and upon seeing that nobody took care of me, nor took me to the hospital, I went out and my car was parked in front, I took it and I went to my mother." Upon being asked if he could see from where those shots were coming, he answered "No, sir, because I was looking at the money that I was going to pay to the bartender." He testified that the lighting in the bar was in colors and that there are dim places in the establishment.

It is apparent from what has been stated that the determination of the trial judge to the effect that the identification was reliable and that the question raised by the defense did not lie is based principally on Sierra's testimony that during the afternoon of the events he saw appellant when Sierra was calm and talked with him.

We cannot agree with the trial court that the identification in question is reliable. These are the two grounds that justify our conclusion.

In the first place, we do not believe that, in the light of what has been stated, it was credible that Sierra had seen appellant during the afternoon of the day of the events. We believe that witness Sierra, encouraged by his fondness towards the deceased and, in view of the possibility that the identification based merely on the two seconds that the events lasted would not be considered reliable, he tried to reenforce it with the testimony that he had seen him in the afternoon, fact which resulted at variance with his own testimony that he "did not know or had seen. appellant before that day" as well as with his previous statement that "he had never seen him," statement that he signed and did not correct as to this particular as he did to the other fact which he found that had been erroneously set forth. The prosecuting attorney that took that statement corroborated that Sierra did not tell him that he had seen appellant before or that he asked him to correct the statement in that sense.

In the second place, even assuming that he had seen him in the afternoon, can it be said with reasonable certainty that Sierra saw appellant firing the shots? The following circumstances rather indicate that he could not see him.

The place was semidark. Sierra was using dark glasses. He was about some 16 feet from where the author of the events fired. The shooting and appellant's departure from the place took two or three seconds. Sierra was with his back turned when the first shot was heard. The other three followed within less than two seconds. Upon hearing the shot Sierra first bent down, then he dropped the drink which he was preparing *"and as soon as the boy went away running I turned around."* (Italics ours.) Therefore he did not see him shooting but perhaps when he was already running out, which means that he did not see him face to face, but at most, from the side, if in fact it was not from the back. Add to this the natural ingredient of the confusion and cloud of smoke of the shots and the reaction of fear and of insecurity that they

produce even in the mind of those more accustomed and the alarm that immediately spread between those present there for, as Sierra testified, "everybody got up . . . everybody became wild and I started shouting 'call an ambulance please.' "

Under the foregoing circumstances, we are constrained to conclude that Sierra could not identify the author of the offenses when he committed them nor was in physical or mental condition to do it and that the identification which he has sought to sustain during his examination is the result of his desire to fix the responsibility for the events occurred on some person in particular.

In view of the foregoing, we need not consider the remaining assignments. Since it does not appear that appellant has been legally identified as the author of the offenses charged against him in this case, the judgments rendered by the Superior Court, San Juan Part, in this case must be reversed and appellant acquitted.

Mr. Justice Dávila delivered a concurring opinion in which Mr. Justice Hernández Matos, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual, join. Mr. Justice Martín, with whom Mr. Justice Pérez Pimentel and Mr. Justice Martínez Muñoz join, delivered a dissenting opinion.

—O—

Mr. Justice Dávila, with whom Mr. Justice Hernández Matos, Mr. Justice Ramírez Bages, and Mr. Justice Torres Rigual join, concurring.

San Juan, Puerto Rico, October 20, 1972

In *People* v. *Gómez Incera*, 97 P.R.R. 243 (1969), we considered extensively the question concerning the fallibility of the identification. The difficulty of identifying a person who has been seen only for an instant is universally accepted.[1]

---

[1] Judge McGowan of the Court of Appeals for the District of Columbia expresses it with clear and precise language: "We know from personal

There we made reference to a study carried out where it was determined that in twenty-nine out of sixty-six cases, the accused was erroneously identified. See Wigmore, *The Science of Judicial Proof*, §§ 250–254 (1937 ed.); Williams & Hammelmann (*Identification Parades*) 1963 Crim. L. Rev. 479, 545; Borchard, *Convicting the Innocent* (1932); Crawford, *Due Process in Extra-Judicial Identifications*, 24 Wash. & Lee L. Rev. 107 (1967); 2 U.C.L.A. L. Rev. 552 (1954).

Precisely the little reliable that the identification of a person by a witness who sees him for the first time in moments charged with emotion and nervousness proves to be is what produces the recent case law of the Supreme Court of the United States, *United States* v. *Wade*, 388 U.S. 218 (1967); *Gilbert* v. *California*, 388 U.S. 263 (1967); *Stovall*

---

experience . . . how easy it is to give a description of someone we have seen briefly, and how hard it is to recognize that person on a second meeting. These difficulties tend only to be compounded by the emotional stress inevitably incident to crime." McGowan, *Constitutional Interpretation & Criminal Identification*, 12 Wm. & Mary L. Rev. 235–239 (1970).

The foregoing contrasts with the affirmation which is made in the dissenting opinion to the effect that "[i]t is well known, that an instant is all that is required to recognize a person already known ['who has been seen before,' would be more precise]." Compare it besides with what has been stated by the Judge of the Supreme Court of New York, Sobel, *Criminal Identification*, 38 Brooklyn L. Rev. 261 (1971): "Many judges have concluded that at best most eye-witnesses can retain the memory of the obvious two eyes, one nose and one mouth. There is always cause for concern when guilt or innocence turns solely on identification testimony without anything further to connect the defendant with the crime" and with what Jerome & Barbara Frank set forth in their work *Not Guilty* at p. 61 (1957): " 'An analysis of the testimony of 20,000 persons who were asked to describe the physical characteristics of the man they saw commit a crime,' wrote an experienced lawyer not long since, 'revealed that, on average, they overestimated the height by 5 inches, the age by 8 years, and gave the wrong hair color in 82% of the cases.' So it is that in hundreds of cases honest witnesses, with complete assurance, have identified the wrong men, but fortunately for most defendants each of them was able to offer irrefutable evidence that he was in some other place at the time of the crime's commission," and with what has been stated by Borchard in *Convicting the Innocent* at p. 367: ". . . that the emotional balance of the victim or eyewitness is so disturbed by his extraordinary experience that his powers of perception become distorted and his identification is frequently most untrustworthy."

v. *Denno,* 388 U.S. 293 (1967), whose objective is to guarantee that the identification of a suspect be carried out in such a manner as to guarantee its reliability.

The trilogy *Wade, Gilbert, Stovall,* in holding that an identification based on a suggestive confrontation constitutes a violation of the due process of law represents the most important contribution to the doctrine in the criminal procedure in the last decades.[2] The cases of *Mapp* v. *Ohio,* 367 U.S. 643 (1961) and *Miranda* v. *Arizona,* 384 U.S. 436 (1966), although more known, do not go into the gist of the question involved in a criminal prosecution, the innocence or guilt of an accused. *Wade, Gilbert,* and *Stovall* protect the integrity itself of the judicial process. They establish a procedure to prevent the conviction of an innocent.

In *People* v. *Gómez Incera, supra,* upon facing this question for the first time at p. 247, we said:

"Having knowledge of the errors which may be committed in the identification of a person who has been observed for a limited period of time, under tension and nervous strain which necessarily affect the sense of perception, the courts should surround this phase of the process of investigation with the necessary safeguards to prevent the miscarriage of justice. The in-court identification, which may be conducted on the day of the trial, cannot be relied upon. The identification at the trial would be tainted with the flaws which characterized the one conducted during the investigatory stage. See *People* v. *Caruso, supra* [436 P.2d 336 (Cal. 1968)]; IV Wigmore, On Evidence, § 1130 (1940 ed.). The witnesses had already determined that the accused was liable. The identification at the trial is a mere formality. As it was stated in the article written by Williams and Hammelmann, *supra,* and which is cited in *Wade,* at p. 229: 'It is a matter of common experience that, once a witness has picked out the accused at the line-up, he is not likely to go back on his word later on, so that in practice the issue of identity may (in the absence of other relevant evidence) for all practical purposes be determined there and then, before the trial.'

---

[2] In *Kirby* v. *Illinois,* 405 U.S. 951 (1972), this doctrine is ratified.

. . . . . . . .

"It is interesting to point out that the Spanish Criminal Prosecution Law provided in its § 369 that 'The identification shall take place by placing before the person who is to make it the person to be identified, producing said person in union with other similar external circumstances. In the presence of all of them or from a point where he cannot be seen, as the judge may consider more advisable, the person to make the identification shall state if the person to whom he may have referred in his declarations is in the group, and in an affirmative case he shall designate him in a clear and specific manner. In the record made all the circumstances of the act shall be stated, as well as the names of all who may have composed the group.'"

Notwithstanding what was said in *Gómez Incera,* the police in the present case did not follow the pattern recommended there. On the contrary, it pointed at the suspect telling the witness "you know this one." It is necessary to point out that this occurred despite the fact that the suspect was in a group which was under the police custody. And instead of presenting the latter to him together with the others of the group, he situated the accused in front of the police vehicle in order for the witness to identify him, making thus the suggestion more obvious. It would have been easy to adjust to the norms suggested in *Gómez Incera* to guarantee a reliable identification.

In no manner whatsoever is the *Gómez Incera* case an authority to sustain the thesis that in every occasion the lineup may be cast aside, and apply the rule of "entirety of the circumstances" employed there to sustain that the identification was reliable.

*Gómez Incera* is indeed an authority to sustain that, if as a result of circumstances beyond the police control it becomes imperative to disregard the presentation of the suspect in a lineup in order to be able to carry out the investigation, the identification thus made may be reliable if from the entirety of the surrounding circumstances it appears that the

accused's rights have not been violated. But it must always be kept in mind, as the Court of Appeals of New York stated in *People* v. *Ballott*, 233 N.E.2d 103–106 (1969), that " 'Absent . . . circumstances necessitating resort to such a procedure, the practice of having a witness secretly view, for identification purposes, only the very suspect whom the police have taken into custody for the crime can be "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to amount to a denial of due process of law.' " See also, *Pretrial Identification*, 55 Minn. Law Rev. 779–790–791 *et seq.* (1971); Sobel, *Criminal Identification*, 38 Brooklyn L. Rev. 261–264–275 (1971). In this last article it is said at p. 264: "There is no doubt, however, that a fairly conducted lineup remains the best available means of accurate pretrial identifications. Any procedure of lesser exactitude conducted when an *opportunity for a lineup is available,* such as a 'showup' or 'photo identification,' should be justified by circumstances making lineup procedures impracticable." Criteria has been expressed in the sense that all identification not made in the lineup violates the due process of law. *Wright* v. *United States*, 404 F.2d 1256, 1262 (D.C. Cir. 1968) (Bazelon, C. J. dissenting). See besides, *Due Process Considerations in Police Showup Practices*, 44 N.Y.U. L. Rev. 377 (1969).

The foregoing would be sufficient to dispose of the present case and decree the inadmissibility of the identification since, as the Supreme Court of the United States stated in *Gilbert* v. *California, supra,* p. 273: "Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right. . . ."

But, to the effects of considering the position of the dissidence, that the extraordinary circumstances that justify setting aside the ruling in *Gómez Incera* (to show the suspect

in a lineup), are present here, still it becomes imperative to reverse the judgment.

In the case at bar when the defense alleged before the trial court that the accused's identification process did not comply with the rules suggested in *Gómez Incera,* the court, upon dismissing the contention, stated:

"We understand that the question posed by the Defense does not lie for which reason the same is dismissed inasmuch as it is a question for the jury to decide whether that identification under that circumstance satisfies them in the sense that that was the person who committed the facts charged in the informations filed by the Prosecuting Attorney in these cases." (Tr. Ev. pp. 180–181.)

It appears from the transcript of evidence that before the jury retired to deliberate the defense requested the court to instruct the jury as to that particular and the court refused.[3]

---

[3] We copy the complete incident:

"MR. TORRES GONZÁLEZ:

Then, Your Honor, we understand that in this particular case despite the decision of the Honorable Court in the sense that it admitted that there was an adequate identification or that it was sufficient at law in view of the question of time, the jury is not properly oriented in the sense of what the minimum of identification should be pursuant to law in accordance with the case of The People of Puerto Rico v. Superior Court and the case of Gómez Incera. We understand that . . . .

JUDGE:

Why didn't the colleague present that instruction when we invited him to do so?

MR. TORRES GONZÁLEZ:

I assure you that it was an omission on my part not to have requested it when you gave the special instructions and I got up and told the court that I did not have any special ones believing that the court would charge them upon establishing the reasonable doubt and would make it a general one, but upon seeing that it did not include it in the instructions as to reasonable doubt I have no other recourse but to ask the court to give those instructions as to the identification when it is not guaranteed by assistance of counsel. We request the Honorable Court to tell the jury that that identification is alien to counsel representation and that the rules established by the Supreme Court or the law in Puerto Rico concerning an adequate identification are not followed, that they should take into

For the jury to make a conscious determination as to the credibility of the evidence introduced concerning appellant's identification, the judge should have instructed it adequately as to this particular. It was proper to charge it that it was incumbent upon the jury to determine if defendant's identification had been established beyond reasonable doubt; that what is advisable is to present the suspect together with

---

consideration whether all that was done or not, whether despite the fact that the steps which should have been taken were not taken, the identification is adequately established.

JUDGE:

That is a matter of law that the court decided. As a matter of fact the jury is going to pass on the evidence and is going to determine if it was the defendant who fired the shots or whether they have any reasonable or grounded doubt, that is the question of facts which the jury must decide.

MR. TORRES GONZÁLEZ:

How is the jury going to understand the fact that the prosecuting attorney is bound to show the guilt beyond reasonable doubt if it does not know, how is it going to decide the amount of evidence which the prosecuting attorney is required to show insofar as identification is concerned. I ask the court to charge the jury that the prosecuting attorney has to show the defendant's guilt beyond reasonable doubt, that the prosecuting attorney has the obligation to show within the evidence a minimum of identification that should go not merely to a mere conjecture or suspicion of what the evidence may determine. Please note that a case could conclude if instead of deciding to set aside this question Your Honor grants it, there would be no case and most probable that if I request it, the court already decided that question of law and I understand that the court decided it taking into consideration that he had seen him twice. If the jury finds proved that he did not see him for the first time that part of his testimony is set aside and there remains only the witness' testimony . . . . If it would do that how is it going to determine whether or not that complies with the minimum of evidence that the prosecuting attorney is compelled to produce. That is why I request the court, in the manner which the court deems convenient, to call the jury and give those instructions to it.

JUDGE:

Anything else?

MR. TORRES GONZÁLEZ:

That is all.

JUDGE:

The defense's request is denied."

other persons so that the witness may proceed to identify him, that in the present case it was not thus made, but that if the jury understood that because of the fact that the witness had testified that he had seen him in the afternoon, the lineup confrontation was unnecessary, it was incumbent upon them to determine if the identification was reliable. Without these instructions, what has been set forth in the dissenting opinion to the effect that "the gestures, the voice inflections, the hesitations, as well as the security or certainty shown by the witnesses before the jury should have great weight for the members of this Court, and that is why it is not difficult to disregard it and substitute their criterion by ours" has no ground in the record.[4]

It seems to me that the conclusion that the jury could not have made a conscious determination concerning the credibility of the evidence regarding appellant's identification is inescapable.

—O—

MR. JUSTICE MARTÍN, with whom MR. JUSTICE PÉREZ PIMENTEL and MR. JUSTICE MARTÍNEZ MUÑOZ concur, dissenting.

San Juan, Puerto Rico, October 20, 1972

I dissent. In *People* v. *Morales Romero, ante*, p. 434, upon referring to the *Gómez Incera*[1] case we said:

"In *Gómez Incera,* besides suggesting some rules which should be followed in the identification procedure, we adopted the basic and fundamental doctrine established in the *Stovall*[2]

---

[4] That an instruction as to these particulars is necessary for the jury to be able to make a conscious adjudication is shown by the fact that specific instructions as to this matter have already been suggested. See Kestell, *Lineups Identification,* 5 University of San Francisco L. Rev. 85–103 (1970).

[1] *People* v. *Gómez Incera,* 97 P.R.R. 243 (1969).

[2] *Stovall* v. *United States,* 388 U.S. 293 (1967).

and *Simmons*[³] cases, . . . to the effect that the determination of whether the due process of law has been violated in the identification procedure of a suspect depends on the totality of the circumstances surrounding the identification procedure."

The rules in *Gómez Incera*[⁴] should be followed in everything possible for the purpose of complying with the requirements of the due process of law. We agree that the practice of presenting for identification only one person before the witness should be avoided. But said rules should not constitute a straightjacket preventing the consideration of the entirety of the circumstances surrounding the identification procedure, what may substitute the omission in the observance of any of the rules of *Gómez Incera*.

A careful analysis of the testimony of the principal witness for the prosecution, Félix Sierra Crespo, with respect to appellant's identification reveals the following facts. That in the afternoon of the day of the events appellant had been in the business and had inquired for the deceased. That he had never seen appellant before that day. That appellant was wearing flashy clothes, of orange color, the shirt with the pants in combination. That he was a young man about 20 years old, tall, thin, and olive-colored skin. That during the night, when the shooting occurred in his business, he saw appellant again, although for one instant, with the same garb that he was wearing in the afternoon. It arises from the evidence that the said place of business was semidark, but not completely dark; that appellant was located, while shooting, some 16 feet from where the witness was standing, in

---

[³] *Simmons* v. *United States*, 390 U.S. 377 (1968).

[⁴] The *Gómez Incera* case was decided approximately a month before the performance of the identification which is challenged in this case. It is convenient to point out that that case was the object of a reconsideration, and it was not until December 5, 1969, six months after the occurrence of the events in this case, that the reconsideration was finally disposed of.

front of a jukebox that projected the glare of two large bulbs besides that of some colored bulbs inside the jukebox; that there was light besides over a billiard table where some clients were playing and it consisted of an intense bulb and a fluorescent lamp; that there was a pink light in the bar; all that in a small place that measures 18 x 24 feet.

Let us not forget that witness Sierra Crespo is used to the soft light in the place. It is well known that the human eye is a sort of photographic camera that has an adjustable opening to admit light. That adjusting function is exercised by the pupil as it gradually expands as the darkness keeps increasing, thus obtaining a greater entry of light. The killer upon entering the interior of the semidark business, necessarily had more difficulty than the witness to adjust his vision to the darkness. Nevertheless, it is in that semidarkness that he approached his victim, who was sitting on one of the bar stools, next to witness Ramón Rivera Arocho, and proceeded to shoot him with great precision, causing three bullet wounds.

To witness Sierra Crespo appellant was not an unknown, inasmuch as he had seen him a few hours before the events occurred, and again saw him, although for some instants, in the night of that same day while shooting the deceased. So much so that the witness, before the arrest, could give appellant's description to the police.

When the witness saw appellant, for the first time, in the afternoon, the former was calm, quiet and serene. The second time that he saw him, that is, when the shooting occurred, it cannot be denied that the circumstances caused him surprise, panic, and confusion in a place of soft lights, in the middle of some acts that developed in an instant. It is well known, that an instant is all that is required to recognize a person already known. To this particularity we humans can attest. The witness testified that he did not have any doubt

that appellant is the same person he had seen in the afternoon. His certainty as to appellant's identity was proven even more when he identified him when the latter alighted from the police automobile in which appellant was coming accompanied by other persons.

The majority concludes that Sierra Crespo's testimony in saying that he had seen appellant in the afternoon of the events is not credible. This conclusion overlooks the fact that in the same early morning of the commission of the events the witness gave to the police a description of the killer's identity, what logically he could not have done if he had not seen defendant in the afternoon. Even more, the affirmation made by the majority to the effect that witness Sierra Crespo, moved by his fondness towards the deceased and with the intention of fixing the responsibility upon some particular person, declared with prejudice against appellant upon saying at the trial that "he did not know or had seen appellant before that day," and that the said manifestations contradicted his previous declaration before the prosecuting attorney in the sense that "he had never seen him." In our opinion said contradiction is nonexistent and on the contrary both testimonies are compatible. The witness said, in effect, that he had never seen appellant, that is, referring, in our judgment, to the fact that he had never seen him before the day of the events. We cannot forget that the two times the witness saw appellant happened on the same day, not on different days. His memory, therefore, was fresh. The explanation of "that day" made by the witness at the trial dissipates any doubt which may have existed in his previous statement before the prosecuting attorney. It is proper to observe that the witness' statements before the prosecuting attorney were in answer to some specific questions that the latter made to him on that occasion. Not having before us the nature of the questions asked to the witness by the prosecuting attorney upon taking the original statement we are not in

condition to analyze duly his statement before the prosecuting attorney. Any inference therefrom which we could make now against the evidence presented and not rebutted, contradicted nor contested, is pure speculation.

The events already stated were the object of expressions before the members of the jury, who saw and heard the testimonies, and who were in a better position than us to weigh the veracity of the same. The gestures, the voice inflections, the hesitations, as well as the security or certainty shown by the witnesses before the jury should have great weight for the members of this Court, and that is why it is not difficult to disregard it and substitute their criterion by ours. The concurring opinion of the distinguished colleagues of this Court does not grant any importance whatsoever to the evidence before the jury that witness Sierra Crespo had seen defendant in the afternoon of the day of the events, then he saw him again for an instant at the time of the events, and even more he offered to the police defendant's description the same night of the events. Such evidence before the consideration of the jury gives reliability to the identification made at the trial.

The doctrine established in the *Stovall* and *Simmons* cases, *supra*, for the determination of what constitutes due process of law in the procedure of identification is quite ample. The application of the said doctrine requires, logically, a determination as to the particular facts of the specific case. Such determination falls upon the shoulders of the trier, whose function involves discernment, objectivity, impartiality, perception, and sense of justice.

Notwithstanding the criterion which we state in this dissent we believe that it should be prevented as far as possible that the confrontation performed in any case be so markedly suggestive as to result in a not reversible identification error, which would clearly constitute a violation of the due process of law.

We do not doubt, however, that appellant's identification in the case at bar complied with the requirement of the due process of law and that his conviction was based on the weighing of all the circumstances that surrounded the procedure of identification.

With regard to the assignment of the concurring opinion in the sense that the trial court erred in not instructing the jury as to the rules suggested in *Gómez Incera*, it seems to us that the determination as to the compliance with said rules, in the light of all the circumstances that surrounded the identification procedure, for being a question of law it was incumbent upon the trial judge to decide it and in effect he made a correct decision.

The judgment appealed from should have been affirmed.